## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), and have been since July 8, 2018.  As a SA with the DEA, I completed the 16-week DEA Basic Agent Training ("BAT") course in Quantico, Virginia.  As part of the BAT course, I received training in narcotic investigations, narcotic interdiction, identification of narcotics, search and seizure issues, surveillance techniques, preparation and execution of narcotic search warrants, debriefing of defendants, witnesses, and cooperating sources.  As of December 23, 2018, I have been assigned to the DEA-Youngstown Resident Office (YRO), Task Force Group #D-48.  Prior to my employment with the DEA, I was employed as a Police Officer by the City of Portage, Indiana for approximately six and a half years and graduated from the Northwest Indiana Law Enforcement Academy (NILEA) in Hobart, Indiana.

2. I have been involved in numerous narcotics-related arrests, have executed search warrants that resulted in the seizure of narcotics or dangerous drugs, and have supervised the activities of numerous informants and cooperating witnesses who have provided information and assistance resulting in drug buys, searches, and arrests.  Based on the above experience, I am familiar with the *modus operandi* of persons involved in the illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances.  I am aware that persons involved in the illicit distribution of controlled substances nearly always attempt to conceal their identities and the locations where drugs are sold and stored, which are frequently at locations different from where they reside.  I am also aware that persons involved in the illicit distribution of controlled substances utilize cellular phones to communicate with one another.  I am also aware that drug traffickers use vehicles to transport

drugs to and from locations where drugs are stored. I also am aware that drug traffickers, when preparing vehicles for travel and transport and during the actual travel and transport, frequently use counter-surveillance tactics to avoid detection and apprehension by law enforcement, including storing their vehicles in locations where they can be privately accessed while remaining hidden from observing law enforcement. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds.

3. On a regular basis, I review law enforcement bulletins and intelligence reports regarding narcotic trafficking and smuggling, and remain in communication with counterparts in order to remain up to date with modern techniques and trends used by narcotic traffickers in the domestic and international arena.

4. Based upon my training, experience and discussions with other Special Agents and law enforcement officers concerning the distribution of controlled substances, I know:

a)   That drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies;

b)   That drug traffickers very often place assets in corporate entities in order to avoid detection of these assets by government agencies;

c)   That even though these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them;

d)   That drug traffickers often place drugs and assets in hidden locations, known as "safe houses," to protect and conceal the location from government agencies, thereby

avoiding conducting transactions at these places, but often times in very close proximity to these locations; and

e)    That drug traffickers frequently use automobiles to transport or hide drugs and drug proceeds.

5.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, U.S.C. Section 841(a)(1), that is, knowingly and intentionally distributing and possessing with the intent to distribute Cocaine; and Title 21, U.S.C. Section 846; that is, conspiracy to distribute Cocaine have been committed by **JOSE GUADALUPE VASQUEZ RIOS, JOSE FRANSICO ESPINOZA-MEDINA, JAVIER ORTIZ-DELGADO, HECTOR DELIRA-RICO, CASIMIRO HIDALGO-HERRERA**.

## PROBABLE CAUSE

7. On or about May 10, 2019, **JOSE ESPINOZA-MEDINA** flew into Dallas, Texas from Aguascalientes, Mexico.  On or about May 12, 2019, **JOSE ESPINOZA-MEDINA** arrived at **JOSE RIOS's** residence, 4046 Kirk Rd., along with two unidentified Hispanic males in a white GMC Sierra with a cap.  **JOSE RIOS, JOSE ESPINOZA-MEDINA,** and the two unidentified males removed the cap and stored it inside of **JOSE RIOS's** garage.

8. On or about May 14, 2019, the white cap was put back on the GMC Sierra.  **JOSE ESPINOZA-MEDINA** and an unidentified male entered the vehicle and departed the residence.

3

9. On or about May 23, 2019, **JOSE ESPINOZA-MEDINA** flew into the Dallas/Ft. Worth International Airport in Dallas, Texas.

10. On or about May 26, 2019, at approximately 6:36 a.m., investigators observed **JOSE ESPINOZA-MEDINA's** white GMC Sierra with a cap arrive at **JOSE RIOS's** residence. Investigators observed **JOSE ESPINOZA-MEDINA** and an unidentified male exit the GMC Sierra and enter **JOSE RIOS's** residence. At approximately 7:04 a.m., investigators observed **JOSE RIOS**, who was carrying a red cooler, **JOSE ESPINOZA-MEDINA** and two unidentified males exit **RIOS's** residence. Investigators noted that one of the unidentified males was the same person who had exited **JOSE RIOS's** residence with **JOSE ESPINOZA-MEDINA** on May 14, 2019. Investigators then observed **JOSE RIOS** load the red cooler into the tailgate of the GMC Sierra. **JOSE ESPINOZA-MEDINA** and the two other unidentified males entered the GMC Sierra while **JOSE RIOS** entered a Cadillac Escalade. Both vehicles then exited the driveway.

11. At approximately 9:38 a.m., investigators observed **JOSE RIOS's** Cadillac Escalade return to 4046 Kirk Rd. Investigators observed **JOSE RIOS** exit the front driver's seat, **JOSE ESPINOZA-MEDINA** exit the front passenger seat, and two other unidentified males exit the rear seats. All four individuals then entered the front door of the residence.

12. On or about June 6, 2019 at approximately 5:38 a.m. Central Daylight Time, the GMC Sierra registered to **JOSE ESPINOZA-MEDINA** was observed by a License Plate Reader (LPR) in Camden, Tennessee. At approximately 7:41 a.m. Central Daylight Time, the GMC Sierra was observed by a LPR in an unknown location in Kentucky.

13. On or about June 7, 2019 at approximately 3:13 p.m., investigators observed a silver 2019 Subaru Outback arrive at 4046 Kirk Rd. Investigators then observed **JOSE RIOS** and two unidentified males exit the vehicle and enter the front door of the residence. At approximately

4:05 p.m., investigators observed **JOSE RIOS** and the two unidentified Hispanic males exit the front door of the residence and approach the Subaru Outback. Investigators observed one of the unidentified males carrying a black colored duffel bag, which the male loaded into the rear passenger seat door. Investigators next observed **JOSE RIOS** open the rear driver's side door, lean into the rear driver's side passenger area, and then close the door. **JOSE RIOS** then entered the front driver's seat while the two other males entered the front and rear passenger side seats. At approximately 4:06 p.m., the Subaru Outback exited 4046 Kirk Rd. At approximately 10:56 p.m., investigators observed the Subaru Outback return to 4046 Kirk Rd. Immediately following, the white GMC Sierra with a cab entered the driveway. At this time, investigators observed **JOSE RIOS** enter the front door of the residence. Investigators then observed two unidentified males exit the GMC Sierra as **JOSE RIOS** exited the residence and walked back towards the garage. Investigators then observed the two unidentified males leaning into both the driver's and passenger's side backseat area. Investigators also noted that one of the unidentified males squatted down with both of the front and back passenger side door opened and appeared to either look at or do something to the floor board of the vehicle. Investigators then observed **JOSE RIOS** and the two unidentified males enter the front door of **JOSE RIOS's** residence. At approximately 11:07 p.m., investigators observed the two unidentified males exit the front door of the residence and enter the GMC Sierra. At approximately 11:09 p.m., investigators observed **JOSE RIOS** exit the residence and hand one of the unidentified males a package that he carried into the pickup truck. At approximately 11:12 p.m., investigators observed the pickup truck exit 4046 Kirk Rd.

14. On or about June 26, 2019, investigators were notified that **JOSE ESPINOZA-MEDINA** had crossed into the United States as a pedestrian via the Laredo/Lincoln Juarez Bridge at approximately 10:30 a.m., Eastern Standard Time.

15. On or about June 27, 2019 at approximately 5:25 p.m., investigators observed a silver Chevrolet Sonic arrive at **JOSE RIOS's** residence, 4046 Kirk Rd. At approximately 7:53 p.m., investigators observed **JOSE RIOS** and an unidentified male wearing a white shirt arrive at 4046 Kirk Rd. in a dark colored Dodge Ram with an enclosed trailer. Investigators also observed a silver Ford Fusion registered to **JOSE ESPINOZA-MEDINA** in the driveway.

16. On or about August 2, 2019, investigators were notified that **JOSE ESPINOZA-MEDINA** had crossed the Lincoln-Juarez Bridge via taxi into the United States. **JOSE ESPINOZA-MEDINA** claimed that he was just visiting Mexico and was going to travel to Dallas, Texas to look for work.

17. On or about August 4, 2019, at approximately 7:48 a.m., the GMC Sierra with the white cap arrived at **JOSE RIOS's** residence, 4046 Kirk Rd. At that time, a silver Cadillac CTS and a black Dodge Ram with an attached enclosed trailer were both parked in the driveway of the residence. A male, who appeared to be **JOSE ESPINOZA-MEDINA**, exited the vehicle and spoke with **JOSE RIOS** and another unidentified male. At approximately 7:50 a.m., **JOSE RIOS** entered a black Dodge Ram and moved the Dodge Ram and trailer forward so that the entrance to the attached overhead garage door was accessible. At approximately 7:53 a.m., **JOSE RIOS** entered the Cadillac CTS and moved it into the front yard of the residence so that it was also out of the way of the path from the GMC Sierra to the overhead garage door. At approximately 7:54 a.m., **JOSE RIOS** and the unidentified male removed the white cap from the bed of the GMC Sierra and carried it inside **JOSE RIOS's** attached garage. At approximately 8:00 a.m., **JOSE ESPINOZA-MEDINA** and the unidentified male exited the front door of the residence. **JOSE ESPINOZA-MEDINA** climbed into the bed of the GMC Sierra and appeared to adjust something in the bed of the truck while the unidentified male appeared to enter the Dodge Ram and exit the

6

residence.  At approximately 8:02 a.m., **JOSE ESPINOZA-MEDINA** got out of the bed of the GMC Sierra, entered the vehicle and departed from the residence.

18.  At approximately 10:07 a.m., the Dodge Ram with an enclosed trailer arrived at **JOSE RIOS's** residence.  The vehicle backed in to the driveway and backed the trailer up so that is was almost touching the overhead garage door.  **JOSE RIOS** and the unidentified male exited the Dodge Ram.  The unidentified Hispanic male then unhooked the enclosed trailer from the Dodge Ram, and he and **JOSE RIOS** then entered the residence.

19.  At approximately 11:24 a.m., the Dodge Ram returned to **RIOS's** and backed the Dodge Ram up to the enclosed trailer.  The unidentified male then exited the passenger side door and reattached the enclosed trailer to the Dodge Ram.  The Dodge Ram was then pulled forward, at which time the unidentified male opened the doors of the trailer, and the trailer was then again backed up to the overhead garage door, almost touching it.  The open trailer door was then adjusted so that it concealed the inside of **JOSE RIOS's** garage from the view of Kirk Rd.

20.  At approximately 11:45 a.m., the overhead garage door of 4046 Kirk Rd. was opened.  At approximately 11:46 a.m., **JOSE RIOS** and the unidentified male were observed placing the white cap from the GMC Sierra inside of the enclosed trailer.  Once the white cap was inside the trailer, **JOSE RIOS** reentered the Dodge Ram and pulled it slightly forward away from the garage.  At approximately 11:56 a.m., **JOSE RIOS** and the unidentified male began loading items into the truck bed as well as the enclosed trailer.  Among the items loaded into the truck and trailer, were a black garbage bag containing unknown items, a shovel, several hand tools, the shop (kilo) press, and several other unidentified items.

21. On or about August 29, 2019 at approximately 12:40 a.m., **JOSE ESPINOZA-MEDINA** crossed into the United States as a pedestrian via the Laredo/Lincoln Juarez bridge by himself.

22. On or about September 5, 2019, at approximately 7:09 p.m., investigators observed the Cadillac Escalade commonly driven by **JOSE RIOS** arrived at 3514 Dover Rd. Investigators observed **JOSE RIOS** exit the Cadillac Escalade and approach the residence empty-handed. At approximately 7:33 p.m., investigators observed a newer model silver colored Chevrolet Impala enter the driveway of 3514 Dover Rd. Investigators observed a male exit the Chevrolet and walk towards the front door of 3514 Dover Rd. and out of camera view. At approximately 7:41 p.m., investigators observed **JOSE RIOS** and the male walk from the rear of the residence towards the male's vehicle. Investigators observed **JOSE RIOS** carrying a duffel bag with a shoulder strap over his right shoulder. **JOSE RIOS** and the male walked to the driver's side of the male's Chevrolet and the male entered the vehicle. **JOSE RIOS** then walked around to the passenger side of the male's vehicle and placed the duffel bag into the male's vehicle. **JOSE RIOS** then leaned into the vehicle and then walked away holding a white plastic grocery style bag in his hand. The bag appeared to have weight due to the contents having a distinct shape. The white plastic bag had a flat bottom with distinct corners which is consistent to currency when bundled together. Investigators observed **JOSE RIOS** walk back to the rear side of the residence and the male departed in the Chevrolet Impala.

23. On or about September 17, 2019 at approximately 9:19 p.m., **JOSE ESPINOZA-MEDINA** crossed into the United States from Mexico.

24. On or about September 19, 2019 at approximately 8:31 p.m., **HECTOR DELIRA-RICO** and **JAVIER DELGADO-ORTIZ**, arrived at 4046 Kirk Rd. in a dark colored

8

Chevrolet car. The Chevrolet car was backed into the driveway. At approximately 8:41 p.m., **CASIMIRO HIDALGO-HERRERA** departed 3514 Dover Rd. in a white 2016 GMC Sierra. At approximately 9:00 p.m., **CASIMIRO HIDALGO-HERRERA** in the white GMC arrived at 4046 Kirk Rd. At 9:03 p.m., **CASIMIRO HIDALGO-HERRERA** left and returned to 3514 Dover Rd.

25. On September 20, 2019 at approximately 9:38 a.m., **CASIMIRO HIDALGO-HERRERA** departed 3514 Dover Rd. in the GMC truck. At approximately 9:50 a.m., **CASIMIRO HIDALGO-HERRERA** entered the front door of 4046 Kirk Rd. At approximately 10:06 a.m., **CASIMIRO HIDALGO-HERRERA**, **HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** exited 4046 Kirk Rd. **CASIMIRO HIDALGO-HERRERA** and **JAVIER DELGADO-ORTIZ** both carried what appeared to be tool bags. All three subjects entered the GMC truck and then departed 4046 Kirk Rd. At approximately 10:11 a.m., the GMC truck arrived at the Family Dollar, located at 3373 Canfield Rd., Youngstown, Ohio. **CASIMIRO HIDALGO-HERRERA**, **HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** all entered the store. At approximately 10:16 p.m., all three males exited the store and re-entered the GMC truck and departed. At approximately 10:23 a.m., the GMC truck arrived at 3514 Dover Rd and parked behind the dark colored Audi parked in the driveway. **CASIMIRO HIDALGO-HERRERA**, **HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** exited the truck and entered the residence.

26. Investigators later learned that the three individuals purchased energy drinks, head phones, and approximately 2000 rubber bands. I know that drug traffickers frequently use rubber bands to band large amounts of U.S. currency. Surveillance video showed that **HECTOR DELIRA-RICO** paid for everything.

27. On or about September 21, 2019 at approximately 3:57 p.m., **CASIMIRO HIDALGO-HERRERA** exited 3514 Dover Rd. **CASIMIRO HIDALGO-HERRERA** placed a yellow lock on the trailer hitch of the enclosed trailer and then departed in the GMC truck. At approximately 4:42 p.m., the GMC truck arrived at 4046 Kirk Rd. **HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** exited the residence and entered the GMC truck. At approximately 4:53 p.m., the GMC truck left the residence. At approximately 5:12 p.m., the GMC truck arrived at 3514 Dover Rd. **CASIMIRO HIDALGO-HERRERA, HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** exited the vehicle and entered the residence.

28. At approximately 6:47 p.m., Donaciano HERRERA, **CASIMIRO HIDALGO-HERRERA, HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** entered the GMC truck and departed 3514 Dover Rd. At approximately 7:49 p.m., the GMC truck returned to 4046 Kirk Rd. **HECTOR DELIRA-RICO**, and **JAVIER DELGADO-ORTIZ** exited the GMC truck and entered 4046 Kirk Rd. At approximately 7:58 p.m., the GMC truck returned to 3514 Dover Rd.

29. On September 24, 2019, **JOSE ESPINOZA-MEDINA's** white 2013 GMC Sierra with a white cap crossed into Ohio from Indiana. Ohio State Highway Patrol Trooper Ann Malone observed the GMC Sierra commit a traffic violation and initiated a traffic stop while the truck was travelling in the Northern District of Ohio. Trooper Malone made contact with **JOSE ESPINOZA-MEDINA**, and **JOSE ESPINOZA-MEDINA** informed Trooper Malone that he was traveling to Cleveland, Ohio to visit a relative in jail, and then planned to return to Mexico. Trooper Malone asked **JOSE ESPINOZA-MEDINA** if he would consent to a search of the vehicle, **JOSE ESPINOZA-MEDINA** consented, and a search was conducted. During the search

of the vehicle, troopers observed that the white cap which was made of fiberglass, contained a hidden compartment made of plywood and bondo and was covered with white paint.

30. Troopers confronted **JOSE ESPINOZA-MEDINA** regarding the hidden compartment and he appeared very nervous.  Troopers took the cap back to their barracks for a more thorough search and found approximately 18 kilograms of a substance consistent with the appearance, texture, and odor of cocaine.

31. On or about September 24, 2019, investigators obtained federal search warrants for 4046 Kirk Rd. and 3514 Dover Rd.  On or about September 25, 2019, at approximately 6:08 a.m., both federal search warrants were executed.

32. **HECTOR DELIRA-RICO** and **JAVIER DELGADO-ORTIZ** were found inside 4046 Kirk Rd.  The following items were located inside of 4046 Kirk Rd: a money ledger inside **HECTOR DELIRA-RICO's** wallet, a money counter in the dining room, a large bag of rubber bands located in a dresser drawer, five vacuum seal bags with cocaine residue that field tested positive for cocaine in the basement sink, an undetermined amount of U.S. currency located in the living room, suspected cocaine in the garage, a black digital scale with residue in the garage, plastic baggies in the garage, a vacuum seal roll in the master bedroom, a drug ledger located in the master bedroom, and suspected marijuana located in the garage.

33. **CASIMIRO HIDALGO-HERRERA** was at 3514 Dover Rd.  The following items were located inside 3514 Dover Rd: a white cap containing an large amount of U.S. Currency in the garage, a kilo press was located in the basement, a money counter was located in the dining room, a heat sealed plastic bag containing suspected cocaine was located in the living room closet, an electronic scale with cocaine residue was located in an upstairs bedroom, a vacuum sealer was located in the living room, two respirator masks were located in the basement, another

electronic scale was located in the basement, and two bags of rubber bands were located in the dining room.

## **CONCLUSION**

34. Based on the foregoing information, there is probable cause to believe that **JOSE GUADALUPE VASQUEZ RIOS, JOSE FRANSICO ESPINOZA-MEDINA, JAVIER ORTIZ-DELGADO, HECTOR DELIRA-RICO,** and **CASIMIRO HIDALGO-HERRERA** did commit Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. 841 (a)(1), and Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. 846 (a)(1) such offense(s) occurred within the Northern District of Ohio.

Respectfully Submitted,

SA Richard Schmitt

Drug Enforcement Administration

Subscribed and sworn to before me on 25th of September, 2019

GEORGE J. LIMBERT

UNITED STATES MAGISTRATE JUDGE

12